IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRYL LEE GOLDSTEIN,<br><br>        Plaintiff,<br>v.<br><br>OFFICER PERRYMAN, et al.,<br><br>        Defendants. | No. C 02-0764 SBA<br><br>**ORDER OF SERVICE AND GRANTING PLAINTIFF'S REQUEST FOR SERVICE ORDER**<br><br>(Docket no. 93) |

Plaintiff Darryl Lee Goldstein, an inmate of San Quentin State Prison, filed a civil rights action pursuant to 42 U.S.C. § 1983 and an application to proceed in forma pauperis (IFP). Venue is proper because the defendants reside, and a substantial part of the events giving rise to the action occurred, in Santa Clara County, California, which is located in this judicial district. See 28 U.S.C. § 1391(b).

In an Order dated June 17, 2003, the Court dismissed the complaint in part with leave to amend. Plaintiff filed two documents labeled "Amended Complaint" on July 9, 2003. Upon receiving these documents, the Clerk of the Court filed the first document, which was typewritten on a § 1983 civil rights complaint form, as the "Amended Complaint" (Docket no. 84). The second document was also labeled "Amended Complaint," but Plaintiff listed the wrong case number and wrong defendant in the caption.[1] As it was clear from the rest of the document that the second document was intended to be filed in this action, the Clerk of the Court corrected the caption to reflect the above-referenced case number and defendant's name. The second document was then labeled "Second Amended Complaint" (Docket no. 85). Upon reviewing both documents, the Court construes the two documents as a single document and directs the Clerk of the Court to consolidate both documents as Plaintiff's "Amended Complaint" (Docket no. 84).

On June 28, 2005, Plaintiff filed a Request for a Service Order (Docket no. 93).

The Court now reviews the claims raised in the Amended Complaint and reconsiders whether

---

[1] Plaintiff had inadvertently marked the second document with the case number and defendant's name in Goldstein v. Flament, C 00-0598 SBA (PR), another case Plaintiff had pending at that time.

Plaintiff states cognizable claims for relief with respect to each of his causes of action. The facts discussed below are derived from the allegations in Plaintiff's original and amended complaints, which are taken as true and construed in the light most favorable to Plaintiff for purposes of the Court's initial review. See Parks School of Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).

## BACKGROUND

The following factual background is taken from the Court's Order dated June 17, 2003:

> On December 16, 2001, Plaintiff was stopped outside the Whole Foods grocery store in Palo Alto, California by David Schulze, the store's loss prevention manager. Mr. Schulze accused Plaintiff of shoplifting and removed grocery items from Plaintiff's bag. Plaintiff told him the bag contained legal documents related to his lawsuit against the Menlo Park Police Department and the San Mateo County Sheriff's Department, which he did not want Mr. Schulze to read. Upon learning of this litigation, Mr. Schulze called the Palo Alto Police Department, whereas he had previously told Plaintiff he would simply ask him to sign a statement and agree not to return to the store. Mr. Schulze conspired with the Whole Foods manager to file a false report claiming Plaintiff stole multiple items from the store. They also conspired with the Palo Alto police officers to cause Plaintiff's arrest.
>
> Palo Alto Police Officers Perryman and Preheim arrived at the store and questioned Plaintiff. After they learned of Plaintiff's litigation against Menlo Park and San Mateo County law enforcement officers, they placed Plaintiff under arrest.
>
> Once Plaintiff was in custody, Officers Perryman and Preheim retaliated against Plaintiff for his legal activity. First, they refused to allow his legal property to be sent to Santa Clara County Jail when Plaintiff was transferred.[2] Those documents included a copy of the Court's September 4, 2001 orders, attorney correspondence, a draft amended complaint against Menlo Park Police Department, and miscellaneous notes. To demonstrate that this confiscation was improper, Plaintiff alleges that the practice in the county jail, as opposed to the Palo Alto Police Department, was to allow inmates to retain their legal documents after they have been searched for contraband.
>
> Second, Officer Perryman refused to provide Plaintiff with his Greyhound bus claim tickets, which he needed to retrieve boxes of legal files relevant to Goldstein v. Flament, C 00-0598. Even after Plaintiff was transferred to county jail, Officer Perryman refused to respond to his repeated requests for the claim tickets. In January 2002, Plaintiff filed a motion in state court requesting release of his legal property and money from the Palo Alto Police Department, but that action apparently was unsuccessful. See Decl. of Darryl Lee Goldstein ISO Claim for Damages, filed April 9, 2002, ¶ 28. Plaintiff also called or wrote to the Palo Alto police chief, city council, and city attorney, seeking release of his Greyhound claim tickets. See Proposed Suppl. Compl., received April 2, 2002. Apparently, those calls and letters went unanswered.
>
> Finally, although the officers originally informed Plaintiff that he would be charged

---

[2] Plaintiff also alleged that the officers failed to list the legal papers on his property report. Attached to his complaint, however, is a Pre Booking Information Sheet that appears to be signed by both Officer Preheim and Plaintiff, which indicates that Plaintiff's property included "paperwork."

with petty theft, they subsequently undertook an aggressive investigation to link Plaintiff to additional thefts, which resulted in more serious charges and a potential sentence of 25 years to life, pursuant to the California Three Strikes Law. Moreover, without informing Plaintiff of his rights, the officers took his photograph, which was subsequently used in a photographic array for identification purposes.

Officers Perryman and Preheim also denied Plaintiff access to his prescription mental health and hypertension medications, which Plaintiff first requested while being transported to the police station by patrol car. Officer Preheim later contacted the Sacramento office of the California Department of Corrections and learned of Plaintiff's mental health and substance abuse problems. For example, Plaintiff's "Parolee Detail Record" indicated he was a psychiatric outpatient. See Compl., att. (downloaded document dated 12/16). Nevertheless, Officer Preheim failed to inform Santa Clara County jail medical staff about Plaintiff's serious medical conditions.[3] She completed a "Santa Clara County Department of Correction Agency Advisory Form," which an arresting agency must provide to the county jail before transferring an arrestee. See Decl. of Darryl Lee Goldstein ISO Claim for Damages, filed June 17, 2002, att. The form indicates that Plaintiff appeared to be intoxicated, but that she had no information that Plaintiff suffered from hypertension or mental health problems. Moreover, just before Plaintiff's transfer to county jail, Officer Preheim denied Plaintiff's request for access to his money, which he needed to contact his doctors, who could have verified his medication needs. As a result of Officer Preheim's conduct, Plaintiff received no treatment at county jail for 30 days while medical staff there attempted to verify his medical needs. He was forced to withdraw "cold turkey" from a powerful psychoactive drug, which aggravated his other health problems, including hypertension, glaucoma, epilepsy and depression.

Officers Perryman and Preheim also denied Plaintiff access to his eyeglasses, see Proposed Suppl. Compl., received April 2, 2002, at 2, and failed to arrange for a medical examination by a police paramedic when Plaintiff arrived at the jail.

In addition to the Whole Foods managers and Officers Perryman and Preheim, Plaintiff names as Defendants Officer McAdams, the Palo Alto Police Chief, and the City of Palo Alto. He alleges that Officer McAdams, the watch supervisor overseeing Officers Perryman and Preheim at the relevant times, failed to properly train these officers. He alleges that the City of Palo Alto has a policy of not allowing prisoners to retain legal papers they possessed when they were arrested (city policy limits transferred property to whatever will fit in a small plastic bag) and a policy of condoning retaliation for lawsuits against law enforcement officers and tolerating constitutional violations. He also alleges that the city failed to train officers regarding handling prisoner property (legal papers, money and medications), failed to train offers to properly deal with prisoners with disabilities (particularly mental health disabilities and especially with regard to providing inmates with medications and reporting medical problems to jail staff), and failed to train officers to read prisoners their rights before taking their photographs for identification purposes. The police chief also failed to discipline Officers Perryman and Preheim for their misconduct.

Plaintiff asserts claims for constitutional violations and for intentional infliction of emotional distress. He alleges that he has satisfied the administrative exhaustion requirement, see 42 U.S.C. § 1915e(a), because there were no administrative remedies available to him that he needed to exhaust before he filed this suit.

---

[3] Perryman failed to properly supervise Preheim; McAdams approved Perryman's police report, which failed to notify jail of Plaintiff's medical needs.

(June 17, 2003 Order at 1-4 [footnotes renumbered].)

## DISCUSSION

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Terracom v. Valley National Bank, 49 F.3d 555, 558 (9th Cir. 1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Moreover, pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

## LEGAL CLAIMS

In its Order dated June 17, 2003, the Court found that two claims in Plaintiff's original pleadings were cognizable under § 1983. The Court found Plaintiff stated cognizable Due Process claims for damages: (1) against Officer Preheim for denial of medical attention, based on her failure to provide Plaintiff with his prescription psychoactive drugs and her failure to document his serious mental health needs and (2) against the City of Palo Alto based on its alleged failure to train its police officers to meet the mental health needs of arrestees. All other claims in Plaintiff's original pleadings were dismissed with leave to amend.

In his Amended Complaint, Plaintiff reasserts the two aforementioned claims that the Court found cognizable. Plaintiff also addresses some of the claims that were dismissed with leave to amend in an effort to correct any of his pleading deficiencies.

**I.      Interference with Legal Activity**

Plaintiff reasserts his claim that Defendants confiscated some of his property with the intent of interfering with his legal activity.

Destruction or confiscation of legal work may violate an inmate's right to access to the courts, see Vigliotto v. Terry, 873 F.2d 1201, 1202 (9th Cir. 1989), if plaintiff can establish actual injury, see Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).

In its Order dated June 17, 2003, the Court analyzed Plaintiff's allegations in his original complaint that Officers Perryman and Preheim confiscated Plaintiff's legal papers and his Greyhound claim tickets (which Plaintiff needed to access other legal papers) in retaliation for Plaintiff's legal activity. (June 17, 2003 Order at 6-7.) The Court determined that Plaintiff sufficiently alleged deliberate interference with his litigation efforts. (See id.) However, the Court found that Plaintiff did not allege an actual injury. (Id.)

In his Amended Complaint, Plaintiff alleges that he was "clearly injured by the confiscation of the Greyhound Claim Tickets." (Am. Compl. at 3.) Plaintiff claims that he was not able to adequately answer the Defendants' Motion for Summary Judgment in Goldstein v. Flament, C 00-0598 SBA (PR). Plaintiff's alleges that his medical files and the actual Motion for Summary Judgment, filed by Defendants in Case no. C 00-0598, were stored at the Greyhound Bus Station. Plaintiff alleges that it was due to his lack of access to his medical files and legal documents that he "lost" his medical claims when this Court "dismissed them" on March 31, 2003. Plaintiff claims that he was prevented from effectively litigating his action in Case no. C 00-0598, and that there was no penological interest for the confiscation of Plaintiff's Greyhound Claim Tickets and legal files.

The Court has previously found that "[t]aking into consideration the allegations made and the evidence submitted in Plaintiff's other pending actions -- Goldstein v. Flament, C 00-0598 SBA; Goldstein v. Perryman, C 03-1556 SBA; Goldstein v. Pough, C 03-1557 SBA; Goldstein v. Flament, C 03-1558 SBA -- the Court concludes that the confiscations did not prevent Plaintiff from effectively litigating any non-frivolous claims, even though they certainly made Plaintiff's prosecution of his claims more difficult." (June 17, 2003 Order at 6.) Despite the loss of his legal papers, the Court found that Plaintiff has had effective access to the relevant evidence by reference to the Court's own orders, which

summarized that evidence. (See id.)

Because Plaintiff has not cured his pleading deficiencies by alleging an injury from his denial of access to the courts, the Court finds that this claim is not a cognizable claim in this civil action.

## II. Denial of Prescription Eyeglasses

In his Amended Complaint, Plaintiff reasserts his claim that Officers Preheim and Perryman violated his Due Process rights by denying him access to his prescription eyeglasses. Plaintiff also alleges Officers Preheim and Perryman were deliberately indifferent to his serious medical needs because they knew of the seriousness of his pre-existing eye problems when they denied him his prescription eyeglasses. In its Order dated June 17, 2003, the Court analyzed this claim and found that Plaintiff failed to allege that he suffered pain or injury as a result of the denial of his prescription eyeglasses. (See June 17, 2003 Order at 9.) Therefore, the Court dismissed this claim because Plaintiff failed to state a cognizable Due Process claim.

When a pretrial detainee challenges the conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). A pretrial detainee, who has not yet been convicted of the crime for which he or she has been charged, is entitled to at least the protections afforded convicted prisoners. See id.

In the prison context, deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511

U.S. 825, 837 (1994).

Plaintiff alleges in his Amended Complaint that he has several eye problems which required prescription eyeglasses including: "[c]hildhood amblyopia [in his] left eye, . . . open angle glaucoma, optic nerve damage, visual . . . [and] defect[s] in his reight [sic] eye." (Am. Compl. at 5.) Plaintiff claims that his eye problems were severely agitated by the denial of his prescription eyeglasses from December 16, 2001 until May or June of 2002 when eyeglasses were provided "at the expense of Friend Outside at the Santa Clara County Jail." (Id. at 5-6.)   Plaintiff claims that he suffered from "advanced glaucoma eye pain" and complained at the County Jail of "ongoing . . . loss of vision . . . and ocular nerve damage." (Id.)  To verify his eye problems and need for prescription lenses, Plaintiff submits an unauthenticated letter from Richard K. Imes, M.D., who conducted Plaintiff's neuro-opthalmology evaluation on June 9, 2003. (See Decl. of Darryl Lee Goldstein in Supp. of Am. Compl. ¶ 10; Pl. Ex. A.) Plaintiff alleges that due to the denial of his prescription eyeglasses, he suffered from headaches, eye pain, emotional distress, high blood pressure and vision loss. (See id. ¶ 11-12.) Plaintiff alleges that Officers Preheim and Perryman were "informed by the Department of Corrections by Fax that Plaintiff in fact had serious eye impairments." (Am. Compl. at 5-6.) Therefore, by denying Plaintiff his prescription eyeglasses located in his property at the time of booking, Plaintiff claims that Officers Preheim and Perryman were deliberately indifferent to his serious medical needs.

The Court finds that Plaintiff has cured his pleading deficiencies by alleging an injury from Defendants' denial of access to his prescription eyeglasses. Therefore, the Court finds that Plaintiff's deliberate indifference claim is a cognizable claim in this civil action against Officers Preheim and Perryman.

Plaintiff also reasserts his claim that the City of Palo Alto failed to train its police officers to properly deal with the needs of arrestees with eye impairments who need access to their prescription eyeglasses. Because the Court has found that Plaintiff stated a cognizable claim with respect to Officers Preheim and Perryman's refusal to provide Plaintiff with access to his prescription eyeglasses, the Court finds that Plaintiff also states a cognizable claim against the City of Palo Alto based on its alleged failure to train police officers to properly handle such situations.

### III. Failure to Accommodate Plaintiff's Disability

Plaintiff reasserts in his Amended Complaint that Defendants failed to accommodate his eye-impairment disability. Plaintiff alleges that "his eye impairment and the information from Sacramento by teletype that he was legally blind in one [e]ye did in fact constitute a disability within the meaning of a pertinent disability anti-discrimination statute." (Am. Compl. at 10.) He also claims that a "reasonable accommodation" would have been for Defendants to allow plaintiff access to his prescription eyeglasses. (Id.)

In its June 17, 2003 Order, the Court found that "[e]ven assuming that this impairment amounted to a disability within the meaning of a pertinent disability anti-discrimination statute, Plaintiff does [not] allege that [he] was denied access to any program or service of the jail as a result of his lack of eyeglasses." (June 17, 2003 Order at 9.) The Court found that Plaintiff failed to state a cognizable claim and dismissed his disability discrimination claim.

Because Plaintiff has not alleged that he was denied access to any program or service of the jail as a result of his lack of eyeglasses in his Amended Complaint, he has not cured his pleading deficiencies by alleging a valid disability discrimination claim. Therefore, the Court finds that this claim is not a cognizable claim in this civil action.

### IV. Proper Defendants

Plaintiff reasserts his claims against Palo Alto Police Chief Pat Dyer and Supervising Officer McAdams in their individual capacity. He claims they were aware of the custom policy and practice alleged in his complaint that violated his constitutional rights, but they took no action to prevent them.

Liability may not be imposed under § 1983 based solely on the theory of respondeat superior. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (there is no liability under § 1983 solely because one is responsible for the actions or omissions of another).

In its June 17, 2003 Order, the Court found that Plaintiff did not allege that Police Chief Dyer and Supervising Officer McAdams directly participated in the alleged unconstitutional acts or that they knew about the acts at the time they were occurring and failed to stop or prevent them (as distinct from failing to discipline the officers after the fact). See Taylor, 880 F.2d at 1045 (holding that a supervisor

8

generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them"). Therefore, the Court dismissed with leave to amend all claims against Police Chief Dyer and Supervising Officer McAdams in their individual capacities.

In his Amended Complaint, Plaintiff alleges that while he was at the County Jail, he wrote to Police Chief Dyer to request him to correct the problem regarding his confiscated Greyhound Claim Tickets. Plaintiff claims that Police Chief Dyer took no action to correct this problem "until it was too late to claim the property." (Am. Compl. at 13.) Plaintiff states that in March or April of 2002, his briefcase was released to his friend, Alex Gordon. (See id.) Because the Court found that Plaintiff failed to state a cognizable claim of denial of access to the courts with respect to his allegation that Officers Perryman and Preheim confiscated Plaintiff's Greyhound claim tickets, the Court finds that Plaintiff also fails to state a cognizable claim against Police Chief Dyer based on his alleged failure to correct this problem. Moreover, Plaintiff does not allege actual injury from Police Chief Dyer's failure to act. Plaintiff claims that his briefcase was released to a friend in March or April of 2002, therefore, Plaintiff had access to the legal documents in his briefcase before his medical claims case was allegedly dismissed on March 31, 2003.

Because Plaintiff has not cured the pleading deficiencies of this claim, the Court dismisses all claims against Police Chief Dyer and Supervising Officer McAdams in their individual capacities.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.      The Court construes Docket no. 84 and 85 as a single document and directs the Clerk of the Court to consolidate both documents as Plaintiff's "Amended Complaint" (Docket no. 84).

2.      The Court GRANTS Plaintiff's request for a service order (Docket no. 93).

3.      Plaintiff states a COGNIZABLE Due Process claim against Officer Preheim for denial of medical attention, based on her failure to provide Plaintiff with his prescription psychoactive drugs and her failure to document his serious mental health needs.

4.      Plaintiff states a COGNIZABLE Due Process claim against the City of Palo Alto based

on its alleged failure to train its police officers to meet the mental health needs of arrestees.

5. Plaintiff states COGNIZABLE Eighth Amendment claims against Officers Preheim and Perryman for deliberate indifference to his serious medical needs for their refusal to provide Plaintiff with access to his prescription eyeglasses.

6. Plaintiff states a COGNIZABLE Due Process claim against the City of Palo Alto based on its alleged failure to train its police officers to properly deal with the needs of arrestees with eye impairments who need access to their prescription eyeglasses.

7. Plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

8. All Defendants other than those named in paragraphs 3 through 6 have not been linked adequately or at all to Plaintiff's cognizable claims and are hereby DISMISSED from this action.

9. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, copies of (1) the Amended Complaint and copies of all attachments thereto (Docket nos. 84, 86, 87), (2) a copy of the Court's Order dated June 17, 2003 (Docket no. 82), and (3) a copy of this Order upon: **1) Officer Perryman; 2) Officer Preheim; and 3) the City of Palo Alto.** The Clerk shall also mail copies of these documents to the Attorney General of the State of California. Additionally, the Clerk shall serve a copy of this Order on Plaintiff.

10. In order to expedite the resolution of this case, the Court orders as follows:

a. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. In addition, no later than **thirty (30) days** from the date their answer is due, Defendants shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of Civil Procedure 56. If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date their summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **forty-five (45) days** after the date on which Defendants' motion is filed. The Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendants' dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff is advised that if he fails to submit declarations contesting the version of the facts contained in Defendants' declarations, Defendants' version may be taken as true and the case may be decided in Defendants' favor without a trial. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

      c.    If Defendants wish to file a reply brief, they shall do so no later than **fifteen (15) days** after the date Plaintiff's opposition is filed.

      d.    The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

11. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. Leave of Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

12. All communications by Plaintiff with the Court must be served on Defendants, or their counsel once counsel has been designated, by mailing a true copy of the document to Defendants or their counsel.

13. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

14. Extensions of time are not favored, though reasonable extensions will be granted. However, the party making a motion for an extension of time is not relieved from his or her duty to comply with the deadlines set by the Court merely by having made a motion for an extension of time. The party making the motion must still meet the deadlines set by the Court until an order addressing the motion for an extension of time is issued. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED: 7/1/05

                                                s/Saundra Brown Armstrong
                                                  SAUNDRA BROWN ARMSTRONG
                                               United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the Plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

    The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

    Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid.

If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

**The prisoner's name and case number must be noted on each remittance.** The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:    Plaintiff/Petitioner
       Finance Office